UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAEED GHAFOORI, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA HOME LOANS, et al.,<br><br>  Defendants. | Case No.  24-cv-01267-DMR<br><br>**ORDER DISMISSING CASE** |

Self-represented Plaintiffs Saeed Ghafoori and Gissou Beykpour Ghafoori bring this action against Defendants Bank of America Home Loans and Bank of America, N.A. Successor by Merger to Bank of America Home Loan Servicing (collectively "BOA"); Bank of New York Mellon ("BNYM"); CWALT, Inc.; and Mortgage Electronic Registration ("MERS"). [Docket No. 40 (Second Amended Complaint, "SAC").] For the following reasons, this action is dismissed without prejudice for lack of federal subject matter jurisdiction.

I.  **BACKGROUND**

   A.  **Statement of Facts**

Plaintiffs make the following allegations in the SAC, which the court takes as true for purposes of this order.[1] Plaintiffs owned the property located at 11 Sky Road, Mill Valley, CA 94941 (the "Property"). SAC ¶ 25. Due to allegedly unlawful, deceptive, harmful, fraudulent, and misleading business practices by Countrywide Home Loans and BOA, Plaintiffs ceased making payments on the loan, and BNYM attempted to proceed with foreclosure against the Property by recording a notice of default on December 5, 2016 (the "2016 NOD"). *Id.* at ¶¶ 35-36. Plaintiffs

---

[1] At the pleadings stage, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

filed suit in the Marin County Superior Court against Defendants on February 14, 2017 (the "2017 Litigation"). *Id.* at ¶ 37.

The parties entered into a settlement agreement on April 18, 2019 (the "2019 Settlement"). *Id.* at ¶ 38. According to Plaintiffs, they agreed to dismiss the 2017 Litigation with prejudice; in exchange, Defendants agreed to rescind the 2016 NOD and not take any actions to pursue foreclosure on the Property until after August 1, 2019. *Id.* at ¶ 40. The parties agreed that the 2017 Litigation and the terms of the 2019 Settlement would be confidential. *Id.* at ¶ 39. The purpose of the 2019 Settlement was to give Plaintiffs an opportunity to conduct a market sale of the Property within the prescribed timeframe without a notice of default "casting a cloud over the Property's title" and making it difficult to sell. *Id.* at ¶ 41.

Plaintiffs engaged with multiple buyers interested in purchasing the Property. *Id.* at ¶ 42. However, Plaintiffs allege that Defendants breached the confidentiality of the 2019 Settlement by sharing its terms to the prospective buyers and informing them of the August 1, 2019 deadline to re-record the notice of default. *Id.* at ¶¶ 43-46. As a result, Plaintiffs were unable to sell the Property before the deadline. *Id.* at ¶ 47. In addition, Plaintiffs allege that they presented Defendants with a valid "Purchase Agreement" between Plaintiffs and potential buyers, which should have extended the deadline to sell the Property by 90 days. *Id.* at ¶ 45. However, Defendants failed to extend the deadline by 90 days. *Id.* Defendants re-recorded the notice of default on September 5, 2019 (the "2019 NOD"). *Id.* at ¶ 47. In response, Plaintiffs brought another suit in the Marin County Superior Court against Defendants on October 18, 2019 (the "2019 Litigation"), which they later dismissed as discussed below. [Docket Nos. 26 (Joel Spann Decl., May 2, 2024) ¶ 8; 26-8 (2019 Compl.).]

On April 12, 2023, BOA provided Plaintiffs with a "Broker Property Opinion"[2] which stated that the market valuation of the Property was $2,700,000. SAC ¶ 10. Plaintiffs subsequently tried to negotiate a purchase of the Note and Deed of Trust of the Property for

---

[2] Plaintiffs characterize this valuation opinion as an "offer" to sell the Note and Deed of Trust of the Property. Plaintiffs provide no facts to support an inference that this was an offer by BOA, as opposed to simply a market valuation of the Property.

2

1    $3,000,000, which BOA "dragged on for months without affirming or rejecting" Plaintiffs' offer.
2    *Id.* at ¶ 11.  In September 2023, Plaintiffs' lender requested a "clear unencumbered transfer" of the
3    Note and Deed of Trust of the Property, but BOA was unable to verify that it would be able to
4    satisfy the lender's request.  *Id.* at ¶ 12.

### B.   Procedural History

6    This federal court case was brought on March 1, 2024.  [Docket No. 1.]  Plaintiffs filed the
7    first amended complaint on April 15, 2024.  [Docket No. 23 (FAC).]  On April 16, 2024, Plaintiffs
8    voluntarily dismissed the state court case in the Marin County Superior Court.  [Docket No. 28
9    (Plaintiffs' Request for Judicial Notice, "Plfs. RJN," Ex. 3).]

10   Defendants moved to dismiss the FAC on May 2, 2024.  [Docket No. 25.]  On July 23,
11   2024, Plaintiffs filed a motion for a temporary restraining order (TRO) seeking to enjoin
12   Defendants from proceeding with a trustee's sale of the Property on August 7, 2024.  [Docket No.
13   34.]  The court held a hearing on the motion to dismiss and the TRO on July 25, 2024, in which
14   the court informed Plaintiffs that it had no authority to rule on the TRO motion because it
15   appeared that it did not have subject matter jurisdiction over the FAC as pleaded.  [Docket No.
16   38.]  The court denied the TRO without prejudice and denied Defendants' motion to dismiss as
17   moot.  *Id.*  At this hearing and the next, Plaintiffs requested additional time to hire a lawyer to
18   assist them, but no attorney has made an appearance on their behalf to date.  At the July 25, 2024
19   hearing, the court granted Plaintiffs leave to file a SAC that established subject matter jurisdiction,
20   and to renew the TRO motion accordingly.  *Id.*

21   On July 30, 2024, Plaintiffs filed a SAC and a renewed TRO motion.  SAC; [Docket No.
22   39 (Renewed TRO).]  The court granted the renewed TRO to preserve the status quo until the
23   court could hold a hearing on the merits.  [Docket No. 44.]  On August 9, 2024, the court held
24   another hearing and ordered Plaintiffs to show cause why this case should not be dismissed for
25   lack of subject matter jurisdiction.  [Docket No. 45.]  The court warned Plaintiffs that this was
26   their final opportunity to establish jurisdiction.  *Id.*  On August 15, 2024, Plaintiffs filed a response
27   to the order to show cause.  [Docket No. 48 (Plfs. Response).]  Defendants filed their response on
28   August 21, 2024.  [Docket No. 49 (Defs. Response).]

## II. SUBJECT MATTER JURISDICTION

Federal courts are courts of limited jurisdiction, and a "federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citations omitted). Lack of subject matter jurisdiction may be raised at any time. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party . . . when a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501–02 (2006).

A federal court may exercise either diversity jurisdiction or federal question jurisdiction. 28 U.S.C. §§ 1331, 1332. Plaintiffs fail to show either type of jurisdiction.

### A. Diversity Jurisdiction

A district court has diversity jurisdiction where the parties are diverse and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332. Parties are diverse only when the parties are "citizens of different states." *Id.* A natural person's state citizenship is determined by his or her state of domicile. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* (internal citation omitted). A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "[D]iversity jurisdiction requires that each plaintiff in a case be a citizen of a different state than each defendant—in other words, that there be complete diversity." *Warner v. Select Portfolio Servicing*, 193 F. Supp. 3d 1132, 1135 (C.D. Cal. 2016).

Plaintiffs have not alleged complete diversity. Plaintiffs allege that they are citizens of California. SAC ¶ 13. But while Plaintiffs allege that Defendants BOA and BNYM are citizens of other states, making them diverse, SAC ¶¶ 14-16, Plaintiffs state that CWALT, Inc. is headquartered in California, making it a citizen of California. SAC ¶ 28. Because one of the Defendants has the same state citizenship as Plaintiffs, this destroys complete diversity and makes

the court unable to exercise diversity jurisdiction.  Plaintiffs also do not state where Defendant MERS is incorporated or has its principal place of business, another reason why Plaintiffs have not pleaded complete diversity.

### B. Federal Question Jurisdiction

Federal law provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  Dismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)); *see also Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030, 1035 (9th Cir. 1985).

Plaintiffs argue that their complaint arises under the Real Estate Settlement Protections Act (RESPA) and Regulation X, 12 CFR § 1024.41.[3]  SAC ¶¶ 21, 103-110; Plfs. Response 1-4. Specifically, Plaintiffs make the following allegations of misconduct by Defendants pursuant to Regulation X: 1) failure to acknowledge receipt of Plaintiffs' loss mitigation application; 2) failure to evaluate Plaintiffs' complete loss mitigation application; 3) moving forward with foreclosure despite having a loss mitigation application from Plaintiffs; and 4) failure to provide Plaintiffs with the opportunity to appeal a denial of loss mitigation.  Plfs. Response 2.  They also assert that

---

[3] Plaintiffs also make passing references in the SAC to other laws that they argue confer federal jurisdiction, including the Truth in Lending Act, the Uniform Commercial Code, the Federal Trade Commission Act, and 28 U.S.C. § 2201.  SAC ¶¶ 21-23.  Plaintiffs have twice been cautioned that they must establish subject matter jurisdiction for this case to go forward, but do not discuss the passing references to these laws in their response to the order to show cause.  And as explained to Plaintiffs in the August 9, 2024 hearing, the court is unable to identify any claims under these laws as potentially viable here.

Defendants' alleged breach of the 2019 Settlement violated RESPA. *Id.* at 4.

Regulation X, codified by 12 CFR § 1024.41, provides a private right of action if certain loss mitigation procedures are not followed by a mortgage servicer. Despite Plaintiffs' multiple opportunities to plead facts supporting their Regulation X claims, their allegations have consistently been insubstantial. Not once do they plead that they actually submitted a loss mitigation application, complete or incomplete. Plaintiffs do not allege what they submitted, when they submitted it, or to whom it was submitted. *See Eddy v. Fed. Home Loan Mortg. Corp.*, No. 218CV2267KJMEFBPS, 2019 WL 4298043 (E.D. Cal. Sept. 11, 2019), *report and recommendation adopted sub nom. Eddy v. Fed. Home Loan Mortg. Corp.*, No. 218CV2267KJMEFBPS, 2020 WL 230087 (E.D. Cal. Jan. 15, 2020) (dismissing plaintiffs' Regulation X claim where they failed to specify when they submitted their application). Plaintiffs simply "recite the requirements imposed by § 1024.41 and conclude that such requirements were not satisfied." *Id.* Moreover, Plaintiffs' factual allegations involving the 2019 Settlement and the 2023 purchase offer appear entirely unrelated to any supposed loss mitigation application. "To state a claim under RESPA, plaintiffs must allege actual damages 'as a result of'—that is, causally related to—defendants' failure to comply with the statute or its associated regulations." *Vethody v. Nat'l Default Servicing Corp.*, No. 16-CV-04713-HRL, 2017 WL 3335970, at *2 (N.D. Cal. Aug. 4, 2017) (citing *Soriano v. Countrywide Home Loans, Inc.*, No. 09-CV-02415-LHK, 2011 WL 1362077 (N.D. Cal. Apr. 11, 2011)). Plaintiffs' alleged damages appear to result from the 2019 Settlement breach and the failed 2023 purchase offer, not a violation of Regulation X.

As a last-ditch effort, Plaintiffs argue that Defendants' breach of the 2019 Settlement violated "specific regulatory requirements" and "undermine[d] the purpose of RESPA, which is to protect consumers from abusive practices by mortgage servicers." Plfs. Response 3. Other than Regulation X, Plaintiffs do not cite any "specific regulatory requirements" under RESPA that Defendants may have violated. RESPA creates a private right of action to redress three types of wrongful acts: "(1) a payment of a kickback for real estate settlement services (12 U.S.C. § 2607(d)); (2) requiring a buyer to use a title insurer selected by the seller (12 U.S.C. § 2608(b)); and (3) a failure by a loan servicer to give proper notice of a transfer of servicing rights or to

respond to a Qualified Written Request for information about a loan (12 U.S.C. § 2605(f)).” *In re Ganas*, 513 B.R. 394, 411 (Bankr. E.D. Cal. 2014). Defendants' alleged breach of the 2019 Settlement does not appear to implicate any part of RESPA. Plaintiffs cite several cases to support their argument, but these cases are irrelevant or do not exist at all. Plfs. Response 3-4; Defs. Response 4.[4]

Plaintiffs have been unable to plead a substantial federal claim despite multiple opportunities to do so. Their RESPA and Regulation X claims "clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction." *Steel Co.*, 523 U.S. at 89. As such, the court has no subject matter jurisdiction over this complaint and must dismiss it in its entirety. *Arbaugh*, 546 U.S. at 501–02.

### III.  CONCLUSION

Plaintiffs' complaint is dismissed without prejudice for lack of federal subject matter jurisdiction. The temporary restraining order entered at [Docket No. 44] is dissolved and the Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: September 13, 2024

DONNA M. RYU
Chief Magistrate Judge

---

[4] Plaintiffs cite *Turner v. Nationstar Mortgage LLC*, 45 F. Supp. 3d 1154 (S.D. Cal. 2014) and *Lenders v. Mortgage Servicing, Inc.*, No. 13-cv-02709, 2014 WL 683456 (D. Ariz. Feb. 20, 2014). These citations do not exist. Plaintiffs also cite *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110 (N.D. Cal 2013) regarding a mortgage servicer's duty to establish a single point of contact with the borrower. This case is not relevant because the single point of contact is a state law requirement, not a RESPA requirement. Finally, Plaintiffs cite *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863 (N.D. Ill. 2002), in which the plaintiff was found to have stated a claim for a RESPA violation. However, the claim was that the defendant failed to respond to the plaintiff's qualified written requests. *Id.* at 868. This case is not relevant because Plaintiffs do not allege that Defendants failed to respond to a qualified written request.

7